```
           UNITED STATES DISTRICT COURT
      FOR THE SOUTHERN DISTRICT OF MISSISSIPPI,
                 WESTERN DIVISION
```

DOYLE MARTIN                                           PLAINTIFF

VERSUS                              CIVIL ACTION NO. 5:06cv26-DCB-JMR

WARING INVESTMENTS, INC. f/k/a
WARING OIL COMPANY, WARING OIL
COMPANY, LLC, and PAT HURST,
individually and in her official
capacity as supervisor                                DEFENDANTS

## OPINION & ORDER

This matter comes before the Court on the defendants' Motion for Summary Judgment [**docket entry no. 24**].  Having carefully considered the Motion, memoranda in support and opposition thereof, applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds and orders as follows:

### I. BACKGROUND & PROCEDURAL HISTORY

Doyle Martin[1], plaintiff herein, was employed by defendant Waring Oil Company ("Waring") as the manager of Store #38 in Vicksburg, Mississippi, from May 1999 until March 2005.  Defendant Pat Hurst was Martin's immediate supervisor at all times relevant to this matter.

On March 23, 2005, after balancing Store #38's safe and determining that $443.00 was missing, Martin contacted Hurst to

---

[1] Martin is a male Caucasian whose date of birth is October 24, 1944.

inform her of the shortage.  On March 25, 2005, Hurst suspended the plaintiff from his position, and on April 1, 2005, Martin received a letter informing him that he was permanently terminated retroactive to the date of his suspension.

On February 27, 2006, Martin initiated a lawsuit against Waring and Hurst in this Court.  In his complaint, Martin alleges that in terminating his employment, the defendants engaged in racial and sexual discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and age discrimination in contravention of the Age Discrimination in Employment Act of 1967 ("ADEA").  The plaintiff also asserts pendent state law claims for defamation and intentional infliction of emotional distress against Waring and Hurst.

On May 29, 2007, the defendants filed their Motion for Summary Judgment [docket entry no. 24].  After several extensions of time which were warranted for good cause, the plaintiff filed his Response [docket entry no. 47] to the defendants' Motion on March 24, 2008.  The defendants filed their Reply [docket entry no. 55] to the plaintiff's Response on April 3, 2008.  Following a request by the Court for additional briefing, the plaintiff filed a Supplemental Response [docket entry no. 58] on May 12, 2008, to which the defendants replied on May 14, 2008.  The defendants' Motion for Summary Judgment is now before the Court.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is apposite "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[2] The party moving for summary judgment bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate." Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986). But the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith

---

[2] "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Ginsberg 1985 Real Estate Partnership v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (internal citations omitted).

Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).  Moreover, "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment.  Anderson, 477 U.S. at 252, 106 S. Ct. at 2512. The nonmovant must instead come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Summary judgment is properly rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322, 106 S. Ct. at 2552.

### III. ANALYSIS

#### A. *Title VII Claims*

Title VII proscribes an employer from discharging or otherwise discriminating against an individual based upon that person's race, color, sex, religion, or national origin.  42 U.S.C. § 2000e-2(a)(1) (2006).  "The Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff."  Alvarado v. Texas Rangers, 492 F.3d 605, 611 (5th Cir. 2007) (quoting Roberson v. Alltel Info. Servs., 373 F.3d 647, 651 (5th Cir. 2004)). Intentional discrimination may be proven through either direct or circumstantial evidence.  Id.  In this case, the plaintiff has not presented any direct evidence of racial or sexual discrimination by the defendants; therefore, his claims based upon circumstantial

evidence must be analyzed under the analytical framework established by the Supreme Court of the United States in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  Id.

Under McDonnell Douglas, a plaintiff must first create a presumption of intentional discrimination by making his prima facie case.  Id.  In order to establish a prima facie case of discrimination under Title VII, the plaintiff must show: 1) he is a member of a protected class; 2) he is qualified for his position; 3) he was subject to an adverse employment action; and (4) others similarly situated outside the protected class were treated more favorably.  Id.

The defendants assert that the plaintiff cannot make out a prima facie case of race or sex discrimination under the McDonnell Douglas framework because he has not shown that others similarly situated outside his protected classes were treated more favorably than he under "nearly identical" circumstances. (Defs.' Mem. 8.) The defendants claim that Alfreda White and Molly Shields, two female, African-American comparators identified by the plaintiff, did not engage in conduct nearly identical to Martin's.  (Defs.' Mem. 9.) According to the defendants, while both comparators were, like the plaintiff, store managers who experienced a money shortage, unlike the plaintiff they had the appropriate paperwork required by the company which could be used to identify the

5

location of the missing money and therefore were not terminated. (Defs.' Mem. 9; Supp. Mem. 4.)  This key distinction, so goes the defendants' argument, makes the comparators sufficiently dissimilar from the plaintiff so as to foreclose a prima facie case of racial and sexual discrimination.

 While not specifically addressing the defendants' positions in its response, the plaintiff apparently believes that White and Shields are adequate comparators.  (See Pl.'s Mem. 11-13.)  The defendants argue in rebuttal that White never had an unexplained safe or cash shortage, but only an inventory shortage, money order discrepancy, and a bad housekeeping charge. (Defs.' Reply Mem. 14-15.)  As to Shields, the defendants admit that two money shortages were involved but assert that Shields (unlike Martin) had her paperwork in order.  (Defs.' Reply Mem. 16.)  These distinctions supposedly account for why White and Shields were not terminated by the defendants as was Martin.

 The Court is of the opinion that the plaintiff has made a prima facie case of race and sex discrimination under the McDonnell Douglas analytical scheme. Martin, a protected male and Caucasian, was clearly qualified for his job and experienced an adverse employment action when he was terminated on March 25, 2005.  As to the fourth prong, the Court finds that Shields (a female African-American) was a person outside of Martin's two relevant protected

classes and was treated more favorably than Martin.[3]  Like the plaintiff, Shields was a store manager who experienced a money shortage on two occasions, but unlike the plaintiff was only given a warning.  (Hurst Depo. 110-14; 272-74.)  The fact that Shields may have had her paperwork while the plaintiff did not have his is a difference to be sure, but one which the Court does not deem significant enough to render Shields less than a "nearly identical" comparator.

The plaintiff having established his prima facie case, the burden then shifts to the defendants to articulate a legitimate, nondiscriminatory reason ("LNR") for their actions.  <u>Alvarado</u>, 492 F.3d at 611.  Here, the defendants' proffered LNR for Martin's termination was the "'unexplained' cash shortage of $443 at Store 38."  (Defs.' Reply Mem. 1; <u>accord</u> Hurst Depo. 162.)  According to the defendants, the money shortage was "unexplained" "because Martin himself failed to maintain and produce paperwork that would have allowed management to pinpoint where and when the shortage occurred."  (Defs.' Reply Mem. 4; <u>see</u> Hurst Depo. 39.)  This paperwork included Pay-Point and Daily Shift Reports from March 21, 2005.  (Defs.' Reply Mem. 7; Hurst Depo. 38-39.)  The Court is of the opinion that the $443.00 unexplained cash shortage is a

---

[3] The Court having determined that Shields is an appropriate comparator and that the plaintiff has established his prima facie case, it need not decide whether White was a person outside of Martin's protected classes and was treated more favorably than him under nearly identical circumstances.

sufficiently legitimate nondiscriminatory reason for the defendants' decision to suspend and terminate Martin.

The defendants having produced admissible evidence of a LNR for Martin's suspension and termination, the plaintiff's "prima facie case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." Alvarado, 492 F.3d at 611.

As to the first option, Martin must produce substantial evidence that the defendants' proferred LNR is false or unworthy of credence. Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." Id.

The plaintiff has not come forward with any evidence which would suggest that the defendants' proffered LNR is false. To the contrary, Martin has always acknowledged that a cash shortage existed and stated in his deposition that he "didn't have it [the paperwork] because I didn't keep it . . ." but instead had "throw[n] it away." (Martin Depo. 101.) Therefore, the plaintiff has not created a genuine issue as to pretext because he agrees with the facts upon which the defendants' stated LNR — an unexplained cash shortage — is predicated.

8

In an effort to cast doubt on the credibility of the defendants' LNR, Martin asserts the following: 1) the defendants gave inconsistent reasons for his termination; 2) he had never before been reprimanded, suspended, or warned about missing money during the nearly seven years in which he had been employed by Waring; and 3) the defendants did not follow established unwritten procedures or act in accord with company practice inasmuch as the plaintiff was terminated before Hurst submitted her investigative report about the unexplained missing money and, therefore, the proferred LNR was a mere "post hoc fabrication."

The plaintiff points to the deposition testimony of Richard Waring where he says that "[i]t wasn't the money, it was the procedure[,]" (Waring Depo. 68), in support of his assertion that the defendants have given inconsistent explanations for his termination. While it is true that pretext may be inferred when the defendant has provided conflicting explanations for an employee's termination, Nasti v. CIBA Specialty Chems. Corp., 492 F.3d 589, 594 (5th Cir. 2007), this Court concludes that a reasonable jury could not find this comment by Waring to be even remotely inconsistent with the LNR upon which the defendants rely. The defendants' LNR is not based upon a mere cash shortage, but rather upon the failure to maintain documentation as required by company policy and practice. Therefore, Waring's statement that "it wasn't the money, it was the procedure" supports rather than

contradicts the defendants' LNR.

The LNR is not simply based upon missing money, but rather upon missing money <u>plus</u> missing paperwork. If the plaintiff could show that he had never been disciplined in the past when both money and paperwork were missing, then perhaps there would be some probative value to such a fact. However, the Court is unable to perceive how prior occasions of missing money which were not followed by discipline is suggestive of a pretextual LNR.

Martin lastly contends that the defendants deviated from unwritten company policy or practice when they terminated him before Hurst submitted her investigative report. Certainly an employer's deviation from its written or unwritten policies and practices may raise an inference of pretext. <u>See</u>, <u>e.g.</u>, <u>Machinchick v. PB Power, Inc.</u>, 398 F.3d 345, 354-55 (5th Cir. 2005); <u>Laxton</u>, 333 F.3d at 581 n.3. However, Martin has failed to produce any evidence which suggests that the defendants' policy and/or practice was to terminate employees only after an investigative report had been submitted. Rather, the plaintiff merely makes the bare assertion that the defendants had and deviated from such a policy or practice.

The Court is of the opinion that the plaintiff has failed to come forward with sufficient evidence to create a genuine issue of material fact as to whether the defendants' LNR was a pretext for race and sex discrimination.

Martin could alternatively carry his burden of going forward by producing evidence indicating that the defendants' LNR was not the only reason for his termination and that his race or sex was also a motivating factor in their decision. However, inasmuch as the plaintiff has not raised such an argument in his responses and memoranda in opposition to the defendants' Motion for Summary Judgment, the Court has no occasion to reach the issue.

Based upon the foregoing, the Court deems the defendants' Motion well-taken as to the plaintiff's Title VII claims.

## B. ADEA Claim

Under the ADEA, "[i]t shall be unlawful for an employer ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). As with Title VII claims, discrimination under the ADEA may be proven by direct or circumstantial evidence. Rachid v. Jack In The Box, Inc., 376 F.3d 305, 309 (5th Cir. 2004). The McDonnell Douglas burden shifting scheme applies to plaintiffs like Martin who possess only circumstantial evidence of age discrimination.

"To establish a prima facie case of age discrimination based on circumstantial evidence, 'a plaintiff must show that (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was

either I) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age.'" Berquist v. Washington Mut. Bank, 500 F.3d 344, 349 (5th Cir. 2007) (quoting Rachid, 376 F.3d at 309).  In this case, there is no dispute that Martin was discharged, was qualified for his position as manager of Store #38, and was within the protected class[4] at the time of his termination.  According to the plaintiff, Sandie Hudspeth, Martin's permanent replacement as manager of Store #38, is "much younger than him and not within the protected age group of the ADEA."  (Pl.'s Mem. 6.)  Although Martin does not advance any evidence indicative of Hudspeth's age, the Court will assume arguendo that she is younger that Martin and, accordingly, that the plaintiff has made a prima facie case of age discrimination under the ADEA.

A prima facie case having arguably been established, "the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff[.]" Id. at 356 (quoting Rachid, 376 F.3d at 312).  The defendants have carried their burden of production by advancing the same LNR in defense of the ADEA claim — an unexplained cash shortage.

"'[T]he plaintiff must then offer sufficient evidence to

---

[4] The ADEA protects individuals who are at least forty years old at the time of the discharge.  29 U.S.C. § 631(a); Cheatham v. Allstate Ins. Co., 465 F.3d 578, 583 n.4 (5th Cir. 2006).  Martin is protected by the ADEA inasmuch as he was sixty years old on the date of his termination.

create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative).'" Id. (quoting Rachid, 376 F.3d at 312).

The Court finds that, as discussed above in Section A, the positions advanced by the plaintiff fail to create a genuine issue of material fact as to whether the LNR is false or lacking in credence and therefore a pretext for age discrimination. Similarly, the plaintiff has not presented any evidence or argumentation which would suggest that his age, in addition to the LNR, was a motivating factor in the defendants' decision to terminate his employment. Accordingly, the defendants are entitled to a judgment as a matter of law on the plaintiff's ADEA claim.

## C. State Law Claims

The Court is not aware of any remaining claims over which it has original jurisdiction.[5] Therefore, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines[6] to exercise supplemental

---

[5] The Court has dismissed all federal question claims and finds no basis for diversity jurisdiction over the state law claims under 28 U.S.C. § 1332, inasmuch as the plaintiff and both defendants are citizens of Mississippi. (Compl. ¶¶ 3-5.)

[6] This exercise of discretion is in keeping with the Fifth Circuit's "'general rule' that courts should decline supplemental

13

jurisdiction over the plaintiff's state law claims for defamation and intentional infliction of emotional distress and will dismiss them without prejudice.

## IV. CONCLUSION

Based upon the foregoing analysis and authorities,

**IT IS HEREBY ORDERED** that the defendants' Motion for Summary Judgment [**docket entry no. 24**] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's state law claims for defamation and intentional infliction of emotional distress are **DISMISSED WITHOUT PREJUDICE.**

**SO ORDERED**, this the 29th day of May 2008.

                                               s/ David Bramlette

                                               **UNITED STATES DISTRICT JUDGE**

---

jurisdiction when all federal claims are dismissed or otherwise eliminated from a case." <u>Certain Underwriters at Lloyd's, London and Other Insurers Subscribing to Reinsurance Agreements F96/2922/00 and No. F97/2992/00 v. Warrantech Corp.</u>, 461 F.3d 568, 578 (5th Cir. 2006).